UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM KINLAW, MARTINE TUCKER, and RICK WILLISTON, on behalf of themselves and all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | No. 15-cv-9760 |
| | ) | |
| v. | ) | Honorable Harry D. Leinenweber |
| | ) | |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, and DOES 1-20, | ) ) | |
| | ) | |
| Defendants. | ) ) ) | |

---

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT AND ISSUANCE OF NOTICE TO THE SETTLEMENT COLLECTIVE**

---

Respectfully submitted by:

Mark Bulgarelli, Esq.
Ilan Chorowsky, Esq.
PROGRESSIVE LAW GROUP LLC
1570 Oak Avenue, Suite 103
Evanston, Illinois 60201
(312) 787-2717 (voice)

Alex Stepick, Esq.
STEPICK LAW LLC
2260 North Elston Avenue
Floor 2 South
Chicago, IL 60614
(773) 245-3884

*Counsel for Plaintiffs*

i

**TABLE OF CONTENTS**

I.     INTRODUCTION ....................................................................................................1

II.    LEGAL STANDARD FOR APPROVAL OF FLSA SETTLEMENTS.............................1

III.   SUMMARY OF THE ALLEGATIONS AND SETTLED CLAIMS.................................2

      A.     Failure to Pay Time and One-Half for Overtime........................................3

      B.     Failure to Timely Pay Hourly Overtime....................................................5

            1.     "Second Week Of Pay Period Late" Hourly Overtime.................6

            2.     "Intervening Commission Pay Day Late" Hourly Overtime.........6

            3.     "Two Or More Regular Pay Days Late" Hourly Overtime..........6

      C.     Unpaid Training Overtime.........................................................................7

      D.     Additional Defenses.................................................................................7

IV.   PROCEDURAL HISTORY.......................................................................................8

V.    THE SETTLEMENT TERMS.................................................................................10

      A.     The Collective.......................................................................................10

      B.     Monetary Relief Available to the Collective Members............................10

      C.     Lead Plaintiff Awards and Attorneys' Fees and Costs............................11

      D.     Broadly Accessible Opt-In Procedure.....................................................11

      E.     Narrowly Tailored Release......................................................................12

      F.     Notice, Opt-In Form and Settlement Check Contents..............................12

      G.     Settlement Administration ......................................................................13

      H.     Cy Pres Relief for Unredeemed Settlement Checks..................................13

VI.   APPROVAL OF THE SETTLEMENT IS APPROPRIATE.........................................14

      A.     Approval and Dissemination of the Notice Pursuant to the FLSA Is Appropriate..16

B.      The Agreed Attorneys' Fees Are Appropriate.............................................................17

C.      The Lead Plaintiff Payments Are Appropriate.........................................................20

VII.    DISMISSAL ...........................................................................................................................23

## **TABLE OF AUTHORITIES**

**CASES**

*Am. Int'l Group, Inc. v. Ace Ina Holdings, Inc.*, No. 07 CV 2898, 2012 U.S. Dist. LEXIS 25265 (N.D. Ill. Feb. 28, 2012)......................................................................................................22

*Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-cv-253, 2015 U.S. Dist. LEXIS 23630 (S.D. Ohio Feb. 26, 2015)......................................................................................................16

*Beesley v. Int'l Paper Co.*, No. 3:06-cv-703-DRH-CJP, 2014 U.S. Dist. LEXIS 12037 (S.D. Ill. Jan. 31, 2014)......................................................................................................22

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013)......................................................2

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)................................................................17

*Boltinghouse v. Abbott Labs, Inc.,* 196 F. Supp. 3d 838 (N.D. Ill. 2016)....................................16

*Briggs v. PNC Fin. Servs. Group*, No. 1:15-cv-10447, 2016 U.S. Dist. LEXIS 165560 (N.D. Ill. Nov. 29, 2016)......................................................................................1, 2, 16, 19, 22

*Campbell v. Advantage Sales & Mktg. LLC*, No. 1:09-cv-01430-LJM-MJD, 2012 U.S. Dist. LEXIS 57218 (S.D. Ind. Apr. 24, 2012)......................................................................................19

*Castillo v. Noodles & Co.*, No. 16-cv-03036, 2016 U.S. Dist. LEXIS 178977 (N.D. Ill. Dec. 23, 2016)......................................................................................14, 21

*Cioe v. Cellco Partnership et al. d/b/a Verizon Wireless*, Case No. 1:11-cv-1002 (N.D. Ill.)......................................................................................10, 13

*City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902 (S.D. Ill. 2012)................18

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998)......................................................................21, 22

*Dawson v. Pastrick*, 600 F.2d 70 (7th Cir. 1979)......................................................................2, 15

*Dominici v. Bd. of Educ. of City of Chicago*, 881 F. Supp. 315 (N.D. Ill. 1995)............................5

*Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560 (7th Cir. 1994)..........................................17

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005)................................................20

*Furman v. At Home Stores LLC,* No. 1:16-cv-08190, 2017 U.S. Dist. LEXIS 73816 (N.D. Ill. May 1, 2017)......................................................................................2, 18, 19, 20, 22

*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998)....................................................................17, 18

*Genesis HealthCare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013)........................................................2

*Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995).................................................................................................................................18

*Hens v. Clientlogic Operating Corp.*, No. 05 Civ. 381, 2010 U.S. Dist. LEXIS 139126 (W.D.N.Y. Dec. 21, 2010).......................................................................................................................14

*In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990)...................................................................................................................................22

*In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001)..........................................................18

*Koszyk v. Country Fin.*, 2016 U.S. Dist. LEXIS 126893 (N.D. Ill. Sep. 16, 2016)..........................................................2, 14, 16, 18, 19, 20, 21, 22

*Lalli v. General Nutrition Ctrs., Inc.*, 814 F.3d 1 (1st Cir. 2016).....................................................5

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)....................................1

*Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992).................................................18

*McCue v. MB Fin.*, No. 15-cv-988, 2015 U.S. Dist. LEXIS 28151 (Mar. 6, 2015 N.D. Ill.)........15

*McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 2, 2010)......................................................................................................................................19

*Meyenburg v. Exxon Mobil Corp.*, No. 3:05-cv-15-DGW, 2006 U.S. Dist. LEXIS 52962 (S.D. Ill. July 31, 2006)..............................................................................................................................22

*Rainey v. American Forest & Paper Ass'n*, 26 F. Supp. 2d 82 (D.D.C. 1998)................................4

*Roberts v. Apple Sauce*, No. 3:12-CV-830-TLS, 2014 U.S. Dist. LEXIS 135747 (N.D. Ind. Sep. 25, 2014)..............................................................................................................................................15

*Salcedo v. D'Arcy Buick GMC, Inc.*, No. 15 C 3677, 2016 U.S. Dist. LEXIS 63947 (N.D. Ill. May 13, 2016)........................................................................................................................................1

*Shoots v. iQor Holdings US Inc.*, No. 15-CV-563 (SRN/SER), 2015 U.S. Dist. LEXIS 141617 (D. Minn. Oct. 19, 2015)........................................................................................................................16

*Spicer v. Chicago Bd. Options Exch., Inc.*, 844 F. Supp. 1226 (N.D. Ill. 1993)...........................17

*Sutton v. Bernard*, 504 F.3d 688 (7th Cir. 2007)...........................................................................20

*Taubenfeld v. Aon Corp.,* 415 F.3d 597 (7th Cir. 2005)...............................................................19

*Teamsters Local Union No . 604 v. Inter-Rail Transp., Inc*., No. 02-CV-1109-DRH, 2004 U.S. Dist. LEXIS 6363 (S.D. Ill. Mar. 19, 2004).....................................................................................18

*Urnikis-Negro v. Am. Family Prop. Servs.,* 616 F.3d 665 (7th Cir. 2010).....................................4

*Velez v. Majik Cleaning Serv*., 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007)...........20

*Watson v. BMO Fin. Corp.*, No. 15-cv-11881 (N.D. Ill. July 11, 2016).......................................19

*Will v. Gen. Dynamics Corp.,* No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349 (S.D. Ill. Nov. 22, 2010).................................................................................................................................17, 18

## STATUTES

29 U.S.C. § 201 *et seq.*...................................................................................................................1

29 U.S.C. § 207.............................................................................................................................4, 5

29 U.S.C. § 216(b)...........................................................................................................................10

## REGULATIONS

29 C.F.R. § 778.106.......................................................................................................................5, 6

29 C.F.R. § 778.114..........................................................................................................................4

## PROPOSED REGULATIONS

73 Fed. Reg. 43,654, 43,670 (July 28, 2008)..................................................................................5

76 Fed. Reg. 18832-01, 18,853........................................................................................................5

## SECONDARY SOURCES

Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in Federal Courts, 29 Berkeley J. Emp. & Lab. L. 269 (2008)...........................................................................................11

Plaintiffs Martine Tucker and Rick Williston ("Lead Plaintiffs") respectfully submit the following Memorandum of Law in Support of their Unopposed Motion for Approval of Collective Action Settlement and Issuance of Notice to the Settlement Collective.

## I.     INTRODUCTION

Lead Plaintiffs, individually and on behalf of similarly situated members of the Settlement Collective defined below, request that the Court enter an order approving the Parties' Agreement and Stipulation of Settlement and Release (*i.e.*, the "Settlement Agreement," "Settlement," or "Agreement"), and approving notice papers to be issued to the Settlement Collective pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, following agreement to material terms of their FLSA settlement in conference with Magistrate Judge Cox.  Dkt. #47.  *See* Settlement Agreement, attached hereto as Exhibit A.  The proposed FLSA collective action Settlement resolves claims for approximately 9,000 workers at Verizon Wireless retail sales locations whom Defendant classified as "Salary Plus" personnel at relevant times.  The Settlement resolves a *bona fide* dispute and provides good value to the workers whom it will benefit.

## II.    LEGAL STANDARD FOR APPROVAL OF FLSA SETTLEMENTS

Settlement of claims under the FLSA require either approval from the Department of Labor or the presiding court.  *Salcedo v. D'Arcy Buick GMC, Inc.*, No. 15 C 3677, 2016 U.S. Dist. LEXIS 63947, at *2 (N.D. Ill. May 13, 2016) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982)).

"Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, (citation omitted), FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions."  *Briggs v. PNC Fin. Servs. Group*, No. 1:15-cv-10447, 2016 U.S. Dist. LEXIS 165560, at *4 (N.D. Ill. Nov. 29,

2016); *Beckman v. KeyBank, N.A*., 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (same); *see also Genesis HealthCare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA").

Due to these fundamental differences between FLSA collectives that do not implicate the same due process concerns, and Rule 23 class actions, "[a] one-step settlement approval process is appropriate." *Briggs*, 2016 U.S. Dist. LEXIS 165560, at *3; *see also Koszyk v. Country Fin*., 2016 U.S. Dist. LEXIS 126893, at *2 (N.D. Ill. Sep. 16, 2016) (same).

As a result of these fundamental differences between FLSA collectives and Rule 23 class actions, courts do not apply the same exacting standards for approval of an FLSA collective settlement as they do for a class action settlement under Rule 23. Rather, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Koszyk*, 2016 U.S. Dist. LEXIS 126893, at *2; *see also Furman v. At Home Stores LLC,* No. 1:16-cv-08190, 2017 U.S. Dist. LEXIS 73816, at *2 (N.D. Ill. May 1, 2017). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Id.*; *see also Briggs*, 2016 U.S. Dist. LEXIS 165560, at *3.[1]

As set forth below, the instant Settlement meets these standards, and as a result, the Settlement should be approved and notice should be sent to the collective allowing them to opt-in and partake in the Settlement.

## III. SUMMARY OF THE ALLEGATIONS AND SETTLED CLAIMS

The Amended Complaint in this proceeding (Dkt. #31) pleads overtime claims under the FLSA on behalf of workers at Verizon Wireless retail stores nationwide, including a collective of

---

[1] Furthermore, "[i]t is a well settled principle that the law generally encourages settlements." *Id.* (quoting *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979)).

retail store workers, and a sub-collective of retail store workers which Defendant paid under a program it called "Salary Plus." The Amended Complaint also pleads overtime claims for an Illinois class of retail store workers.

The proposed Settlement resolves a subset of the claims pleaded. The Settlement provides relief solely under the FLSA, and not state law, for those retail store workers nationwide whom Verizon Wireless employed and designated as "Salary Plus," and who properly opt-in, as required by the FLSA, in order to participate in the Settlement (the "Opt-In Claimants"). As a result, the Settlement releases FLSA claims for those who become Opt-In Claimants; and does not release claims for individuals who do not take part in the settlement. Lead Plaintiffs Tucker and Williston are members of the Settlement collective and participants in the Settlement.

Claims of non-Salary Plus Verizon Wireless retail store employees are not being resolved on a group basis. The claims of Plaintiff Kinlaw, who worked as a non-Salary Plus retail sales employee in Illinois, are being settled individually. *See* Unopposed Motion for Entry of Order Approving Settlement for Plaintiff Kinlaw, filed contemporaneously herewith.

The instant Settlement obtains relief for the group of employees most aggrieved by the claims alleged: Salary Plus workers, who work in assistant manager type positions. Each of these employees was subject to the same pay structure, practices and policies nationwide, and had similar job duties. Declaration of Mark Bulgarelli attached hereto as Exhibit B at ¶¶ 4-8. For these Salary Plus employees, the Settlement would resolve the following FLSA claims alleged in the Amended Complaint.

### A. Failure to Pay Time and One-Half for Overtime.

Plaintiffs allege that Salary Plus employees were improperly paid half time for overtime (as opposed to one and one-half) pursuant to Defendant's application of the fluctuating workweek

rule ("FWW") of the FLSA, 29 C.F.R. § 778.114, which permits half time for overtime only if the pre-conditions are met. Plaintiffs contend Defendant violated § 778.114, *inter alia*, by paying Salary Plus workers varying amounts of compensation in violation of § 778.114, by paying them late,[2] and by paying bonuses (or incentives) and non-overtime premiums.[3] The remedy for improper payment of FWW half-time is, by default, overtime at a rate of one and one-half times the regular rate of pay, less credits of amounts remitted as half-time for overtime, plus liquidated damages if appropriate. *See* 29 U.S.C. § 207.

The FWW claims will be hotly contested should litigation proceed. To date, Defendant has staunchly opposed these arguments on both factual and legal grounds, asserting, for example, that its policies comply with the FWW rule and that the FWW rule supports its interpretation, rather than Plaintiffs'.

The determination of whether the FWW rule applies, involves, in part, addressing the contentious issues of whether the incentives at issue are non-discretionary or time-based, as Plaintiffs contend, and if they are, whether such incentives operate to vary one's wages and invalidate applicability of FWW.

The law on the issue is far from settled. In 2008, the DOL issued a Notice of Proposed Rulemaking and Request for Comment proposing to deem bonus payments to be consistent with FWW pay. The proposal contemplated that "payment of overtime premiums and other bonus and

---

[2] The Seventh Circuit noted that the FWW method of wage payment is only appropriate when the overtime premium was paid contemporaneously to employee. *Urnikis-Negro v. Am. Family Prop. Servs.,* 616 F.3d 665, 678 (7th Cir. 2010); *see also Rainey v. American Forest & Paper Ass'n*, 26 F. Supp. 2d 82, 100 (D.D.C. 1998) ("contemporaneous payment of overtime compensation is a necessary prerequisite for application of the fluctuating workweek method").

[3] Plaintiffs assert that Salary Plus employees are paid non-discretionary, time-based incentives, in the form of commissions, bonuses, and similar incentives which causes the Salary Plus compensation to fluctuate in violation of § 778.114 prerequisites. Defendant contests that any of these incentives are time-based.

non-overtime premium payments will not invalidate the [FWW] method of overtime pay." 73 Fed. Reg. 43,654, 43,670 (July 28, 2008). After weighing a generous stable of comments, the DOL left the regulation unchanged in the 2011 Final Rule, but concluded that "unless additional bonus and premium payments are overtime premiums, they are incompatible" with FWW. Updating Regulations Issued Under the Fair Labor Standards Act, 76 Fed. Reg. 18832-01, 18,853.

Plaintiff argues that the DOL's regulation, including the DOL's action and non-action following notice and comment, controls. However, courts that have addressed the DOL's view on the impact of bonus or incentive pay on FWW, and whether the DOL authority should be followed, have arrived at mixed interpretations. *See, e.g., Lalli v. General Nutrition Ctrs., Inc.*, 814 F.3d 1, 8-10 (1st Cir. 2016). As such, significant risks are associated with the contested litigation of these FWW claims, and even if this Court were to side with Plaintiff, there is a significant likelihood that Defendant would bring the issue before the Seventh Circuit following trial.

### B. Failure to Timely Pay Hourly Overtime.

Plaintiffs assert that Defendant failed to pay overtime in the time prescribed by the FLSA. Under the FLSA, overtime cannot be delayed for a period longer than reasonably necessary to compute and arrange for payment, or beyond the next payday after it could be computed. 29 U.S.C. § 207; 29 C.F.R. § 778.106. The general rule is that overtime compensation earned in a particular workweek must be paid on the regular payday for the period in which such workweek ends. 29 C.F.R. § 778.106; *see also Dominici v. Bd. of Educ. of City of Chicago*, 881 F. Supp. 315, 320 (N.D. Ill. 1995) ("Thus, as a matter of law, the Defendant violated 29 U.S.C. § 207 by unreasonably delaying payment to its custodial employees for overtime performed...."). Three types of alleged late payments are at issue here.

### 1.    "Second Week Of Pay Period Late" Hourly Overtime.

Defendant issues a paycheck for straight time and overtime hours worked by Salary Plus workers on a bi-weekly pay period basis. The designated pay date is a day before that pay period ends. Thus, for all Salary Plus workers, the paycheck contains all straight time for both weeks of the pay period, but only overtime compensation for the first week of the pay period. Overtime compensation for the second week of the pay period ("Week Two") is not paid until the subsequent paycheck, two weeks later. Plaintiffs contend that this fact pattern demonstrates overtime was paid unlawfully late, as, the payment of overtime compensation for the second week of each pay period is more than a week longer than is "reasonably necessary for the employer to compute and arrange for payment of the amount due." 29 C.F.R. § 778.106. Defendant disagrees and maintains that it timely pays overtime to Salary Plus employees.

### 2.    "Intervening Commission Pay Day Late" Hourly Overtime.

Defendant's payroll schedule remits Salary Plus pay for straight and overtime hours worked on bi-weekly paydays, but also designates additional monthly paydays for commission payments. This additional payday often falls between the aforementioned bi-weekly paydays. 29 C.F.R. § 778.106 provides that "...in no event may payment be delayed beyond the next payday after such computation can be made." While Defendant maintains that it pays overtime in the next regular pay period for wages, Plaintiff argues that by failing to pay hourly Week Two overtime on the payday for Week Two, and by failing to pay it a week later when there is a regularly scheduled paycheck for commissions, such overtime payment was late.

### 3.    "Two Or More Regular Pay Days Late" Hourly Overtime.

Plaintiffs and other Salary Plus Employees regularly received certain hourly overtime payments several pay periods after it was reasonably necessary to pay. Defendant's payroll shows

that on average, these certain payments are made more than 44 days after the end of the pay period. Ex. B at ¶ 9.

Defendant contends that said late payments arose out of individualized circumstances, including workers' failures to timely input their hours, that its payment schedule of Week Two overtime complies with the FLSA, and Plaintiff anticipates Defendant will raise other arguments to oppose the claims at every stage.

### C. Unpaid Training Overtime.

Plaintiffs allege that Defendant required Salary Plus workers to complete trainings for which it did not remit overtime. Plaintiffs contend that discovery and fact investigation show that such trainings were part of Salary Plus job duties, but that Defendant did not remit overtime for all training. Plaintiffs' comparison of Defendant's training and payroll records identified alleged failures to pay employees nationwide for overtime associated with training. Ex. B at ¶¶ 8-9.

Defendant contests the claim in its entirety, countering, that employees have a duty to report all training time and that the training records on which Plaintiffs base their claims are not time keeping.

### D. Additional Defenses.

Defendant denies that it violated the FLSA and has vigorously disputed the claims in this case. In addition to the defenses raised above, Defendant asserts defenses aimed at opposing collective certification, and defeating and diminishing the claims on the merits. It also asserts arguments pertaining to damages offsets and calculations, which, if successful, would significantly diminish, or completely offset, the amount of available damages.

## IV.    PROCEDURAL HISTORY

Plaintiffs filed their Class Action Complaint on October 30, 2015, following significant legal and fact research, analysis and investigation.  Dkt. #1.  The Complaint sought overtime relief under the Fair Labor Standards Act, and Illinois state wage law, on behalf of Verizon Wireless workers at retail sales locations in Illinois and nationwide, for improper and untimely payment of overtime, including improper payment of overtime to Salary Plus workers at a half-time time rate (purportedly, on a "fluctuating workweek" basis), and for failure to pay overtime for off-the-clock work.  Following Defendant's appearance and the Parties' Rule 26 conference, Defendant began providing discovery.  Ex. B at ¶¶ 4-7.

Specifically, following an initial discovery production by Defendant and in lieu of Plaintiffs proceeding with their motion for conditional FLSA collective certification, the Parties elected to toll applicable statutes of limitation and to conduct further discovery exchanges, which enabled Plaintiffs to expediently examine data and fact discovery germane to the claims.  During this period, Plaintiffs undertook significant effort in conducting extensive legal research, and developing legal and factual arguments, that derived tactical advantage and which would dually serve the purposes of contested litigation and collective certification, and settlement.  Plaintiffs' counsel undertook in-depth analysis of Verizon Wireless policies, practices and procedures, and worked in tandem with a data computation expert to demonstrate liability, model and valuate damages, and to analyze Defendants' payroll records for Salary Plus workers.  Ex. B at ¶¶ 3-11.  Such advocacy initially enabled Plaintiffs with the ability to tactically hone claims in an amended complaint, and ultimately, to reach a favorable Settlement.

Overall, the Parties engaged in substantial exchange of discovery, comprising numerous document productions, data, and informal discovery over a period of approximately ten months.

Settlement negotiations were thus informed by significant discovery of information pursuant to protective order, including, for example, corporate documents, policies, training data, time data, and payroll data spanning three years prior to the date of filing of Plaintiffs' complaint through September 2016, in addition to significant legal research and data analysis. Ex. B at ¶¶ 4-12.

As part of this process, Plaintiffs' counsel, in conjunction with expert assistance, conducted extensive payroll and data analysis from 9,794,028 lines of unique payroll, time, and training data. Numerous expert data analysis reports and runs and re-runs of reports were performed, providing facts and insight into the strength of the data-dependent claims at issue and damages valuations for the Collective. Ex. B at ¶¶ 4-10.

During this time, moreover, the Parties engaged in numerous conference calls, and exchanged data analyses and detailed written and oral argument, regarding the pleaded claims and Defendant's payroll productions. Pursuant to these exchanges, and significant data and document review and analysis, Plaintiffs were able to weigh prospects and defenses associated with liability, damages, and certification for settlement. Subsequently, while armed with the relevant facts and law and before sparring in court on pleading particulars laden with uncertain outcomes, the Parties went before Judge Cox to explore settlement. Ex. B at ¶¶ 4-15.

Judge Cox held a settlement conference with the Parties in December 2016, wherein the Parties reached agreement on material terms. Dkt. #47. Thereafter, the Parties negotiated and finalized the terms of the settlement, analyzed data for confirmatory purposes, and prepared settlement papers to be provided to the Collective, which were memorialized in the formal Settlement Agreement executed by the Parties in May 2017, including the attendant Notice and Opt-In forms attached hereto as Exhibits C and D respectively. *See* Ex. C and D.

## V.     THE SETTLEMENT TERMS

The key terms of the Settlement are as follows:

### A.     The Collective.

The Parties stipulate to certification of a Collective, pursuant to 29 U.S.C. § 216(b), for Settlement purposes, defined as: All persons who have been employed in a Verizon Wireless retail sales location in the United States (that is, a store, kiosk, or in-store location operated by Verizon Wireless) who were classified and paid overtime as a Salary Plus employee at any time from February 16, 2013 to and including January 16, 2017.  Ex. A at ¶¶ 11, 16.

### B.     Monetary Relief Available to the Collective Members.

The Settlement establishes a fund in the amount of $2,730,000.00, which (together with accrued interest thereon, if any) constitutes the "Settlement Fund," from which Opt-In Claimants will receive a settlement award.  Except for usual and customary payroll taxes, any settlement administration costs exceeding $100,000, and costs relating to escrow, which Defendant will pay separately and out-of-pocket, the Settlement Fund will cover all of Defendant's payment obligations under the Settlement, including all Opt-In Claimant payments, Plaintiffs' attorneys' fees and expenses, and the anticipated fees and costs of the settlement administrator.  Applying known yardsticks, the Settlement could award at least $401.71, and as much as $1,227.36, per Opt-In Claimant on average.[4]

---

[4] Assuming *arguendo* that the opt-in rate replicates those achieved in another wage and hour case involving Plaintiffs' Counsel and Defendant*, see Cioe v. Cellco Partnership et al. d/b/a Verizon Wireless*, Case No. 1:11-cv-1002 (N.D. Ill.) at Dkt. #158-3 (achieving 39.6 percent opt-in rate the settlement class, and 48 percent opt-in rate for settlement subclass), and after deducting Lead Plaintiff awards, attorneys' fees and costs, and the anticipated amount for settlement administration, the average distribution per Opt-In Claimant would be as follows: if 39.6 percent of affected workers opt-in, the Settlement will result, on average, in a claim distribution of $486.92 per Opt-In Claimant; and if 48 percent of affected workers opt in, the Settlement will result, on average, in a claim distribution of approximately $401.71 per Opt-In Claimant.  However, most

### C.     Lead Plaintiff Awards and Attorneys' Fees and Costs.

Verizon Wireless has agreed to pay Plaintiffs' Counsel up to one third (33 1/3%) of the Settlement Fund for their attorneys' fees, and litigation costs, including expert expenses, in the amount of $11,623.26, subject to Court approval.  Ex. A at ¶ 21; Ex. B at ¶ 33.  Furthermore, Verizon Wireless has agreed to pay Lead Plaintiff awards to Plaintiffs Tucker and Williston, up to $10,000 to each, from the Settlement Fund, for their efforts on behalf of the other Collective members and in consideration of a full release of their claims.  *See* Ex. A at ¶ 22.

### D.     Broadly Accessible Opt-In Procedure.

The Settlement provides an array of ways to reach the Collective, and several ways to join the Settlement.  A clearly laid out Notice, which reflects earnest attempts to limit legal-ease and refine terms for understandability, will be sent not only via First Class mail, but also, via email where available from Verizon's records.  Affixed to the outside of each notice mailing envelope, moreover, will be a "QR Code" – a device akin to a bar code, enabling a mobile smartphone to scan and instantly retrieve or submit the settlement papers online.  The Settlement also provides for a website with relevant information and papers, and live telephone support.  The Opt-In Form can be completed on the Settlement website without printing, or can be returned by email, fax or U.S. Mail, and a stamped, self-addressed return envelope is included with the Notice, all to enhance

---

estimates of average opt-in rates for FLSA collective actions fall in the range of 10 to 20 percent, "with virtually no estimates higher than 30 percent." https://www.employmentclassactionreport.com/flsa/in-through-the-out-door-third-circuit-says-flsa-collective-actions-not-incompatible-with-rule-23-sta/, last visited May 4, 2017.  *See also* Andrew C. Brunsden, "Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in Federal Courts," 29 Berkeley J. Emp. & Lab. L. 269, 292-94 (2008)) (average opt-in rate of 15.71 percent).  Applying an opt-in rate of 30 percent, or the ceiling of the normal range of estimates as per above, the average Opt-In Claimant would receive $642.73 from the Fund after deductions.  An opt-in rate according to the above identified average of 15.71%, would net Opt-In Claimants an average award of $1,227.36.  *See* Ex. B at ¶ 22 (approximately 9,000 potential Opt-In Claimant and $1,735,366.74 from Settlement Fund will be distributed to Opt-In Claimants).

Settlement Collective member participation. Some of these items are likely to have particular appeal to the demographic for whom the Settlement is for – service associates in the mobile phone retail industry. The Settlement further provides for re-mailing of Notices returned as undeliverable using Defendant's records, skip tracing, and other means available to the Settlement Administrator, to facilitate robust reach to the Settlement Collective. *See* Ex. A at ¶¶ 34, 36-43.

      **E.**     **Narrowly Tailored Release.**

The release of claims, disclosed in full in the Notice and in summary terms in the Opt-In Form, was firmly negotiated by Plaintiffs to be narrowly tailored, so as to release only claims for Opt-In Claimants, and only for the claims that are being settled for Opt-In Claimants, and not more. State law claims, as well as facts beyond those pleaded and settled here, are not being released, or are expressly excluded from the release of claims. *See* Ex. A at ¶ 47; Ex. C, Question #6; Ex. D.

      **F.**     **Notice, Opt-In Form and Settlement Check Contents.**

The proposed Notice and Opt-In form inform Collective members about the terms of the Settlement, including their options, the release of their claims, and how they can join, and how their award is calculated if they do. *See* Ex. C and D. The Notice pre-populates the values, based on Defendant's records, used to determine the share allocation for each Collective member, and explains how any Collective member can challenge these pre-populated values, per the process established in the Settlement Agreement. Ex. C, Question #5; Ex. A at ¶ 31. The proposed notice papers highlight the importance of settlement deadlines throughout, and the need to update addresses with the Settlement administrator. *See* Ex. C and D. Likewise, Opt-In Claimants have 90 days to cash their settlement checks under the Settlement. The Notice, the checks themselves, *and* correspondence enclosed with the settlement checks all advise Collective members of this

deadline as well. Notice, Question #5 and #9; Ex. A at ¶ 25.

### G. Settlement Administration.

The Settlement requires the Parties to agree to the selection of a Settlement administrator. Upon considering requests for proposals, the Parties have selected Dahl Administration LLC, an experienced settlement administrator, to administer the settlement. *See* Dahl Administration Resume, attached hereto as Exhibit E; Ex. B at ¶ 21. Dahl Administration has served as the settlement administrator in numerous class and collective actions, including wage and hour settlements, and the class action settlement in *Cioe v. Cellco Partnership et al. d/b/a Verizon Wireless*, Case No. 11-cv-01002, N.D. Ill. (J. Valdez), which resolved prior-standing overtime claims of Verizon Wireless retail sales workers lodged in this District. *See id.* at Dkt. #158-3 (Dahl Declaration in support of settlement approval). As agreed per the Parties' settlement conference with Judge Cox in December 2016, fees and costs of settlement administration are to be paid from the Settlement Fund up to $100,000, and above that amount, out-of-pocket by Defendant. Here, the Settlement Administrator has agreed its fees and expenses will not to exceed $53,010, inclusive of all costs associated with notice, postage, telephone and website support, for the approximately 9,000 employee collective. Ex. B at ¶ 21.

### H. *Cy Pres* Relief for Unredeemed Settlement Checks.

A small portion of settlement checks are typically distributed but not deposited or cashed by Collective members, leaving anticipated check amounts in limbo. The Settlement accounts for this reality, and provides that the sum of unredeemed settlement checks are to be remitted, in equal measure, to these *cy pres* recipients: Jobs for the Future, and Corporation for a Skilled Workforce. These nonprofit organizations serve worker interests, and are prepared to use the *cy pres* monies in the manner specified in the Settlement Agreement, that is, "for the purpose of protecting worker

rights, or promoting job training, job opportunities, job quality, or workplace fairness." Ex. A at ¶ 26.

## VI.  APPROVAL OF THE SETTLEMENT IS APPROPRIATE

Under applicable legal standards, the FLSA Settlement should be approved. The settlement was only reached after extensive research, analysis, litigation, discovery, a lengthy arms length negotiation period, a settlement conference navigated by the Honorable Susan Cox, and subsequent negotiation and analysis of additional terms and data. The result was a settlement of a *bona fide* dispute in which Plaintiffs believed that they and other Verizon Wireless employees were not receiving compensation owed to them, while Verizon Wireless vigorously denies liability on all claims, and asserts that it has actually overpaid its employees. Ex. B at ¶ 10. For these reasons alone, approval of the FLSA settlement is appropriate. *See, e.g., Koszyk.,* 2016 U.S. Dist. LEXIS 126893, at *2.

The settlement is reasonable for other notable reasons also. The amount awarded to the Settlement Collective is substantial, and as set forth above, each Opt-In Claimant stands to receive a significant sum. Moreover, the Settlement reasonably allocates money to Opt-In Claimants in proportion to the amount of damages incurred, so that workers damaged more receive a greater award. Ex. A at ¶ 19b. *See, e.g., Castillo v. Noodles & Co.*, No. 16-cv-03036, 2016 U.S. Dist. LEXIS 178977, at *3 (N.D. Ill. Dec. 23, 2016) (approval of FLSA collective settlement with distribution formula); *Koszyk*, 2016 U.S. Dist. LEXIS 126893, at *3 (same); *Hens v. Clientlogic Operating Corp.*, No. 05 Civ. 381, 2010 U.S. Dist. LEXIS 139126, at *5 (W.D.N.Y. Dec. 21, 2010) (allocation formula based on plaintiffs' length of service reasonable).

Moreover, the Settlement presents a favorable alternative to what is likely to entail years of litigation in light of Defendant's opposition on a wealth of issues affecting liability and damages.

*See Dawson*, 600 F.2d at 75 (the law encourages settlements). Objectively, despite the strength of the claims, attendant to the litigation are the risks that Plaintiffs would be unsuccessful, in whole or part, on the merits, or in maintaining a collective through trial; or that damages would be eroded due to Defendants' purported setoffs and counter-arguments. While the law on fluctuating workweek claims at issue lives in a controversial legal environment, the particular types of alleged late payment claims at issue at bar likewise remain untested in court. Though Plaintiffs believe they can ultimately prevail both on liability and at collective certification, should litigation proceed, each of these claims are likely to be the genesis of appeals. As such, the value of the present recovery clearly outweighs the mere possibility of further relief after protracted an expensive litigation. *See Roberts v. Apple Sauce*, No. 3:12-CV-830-TLS, 2014 U.S. Dist. LEXIS 135747, at *4 (N.D. Ind. Sep. 25, 2014).

In addition, a finding that the Collective is similarly situated and properly certified for settlement is proper. As set forth more fully above, and due to Defendant's written policies and Salary Plus employee payroll data, each Salary Plus worker was subject to the practice of paying half-time for overtime; Defendant's late payments to the Collective were systemic and as a whole affected all Salary Plus workers; and Defendant had a practice of not paying employees for training time worked as overtime. *See McCue v. MB Fin.*, No. 15-cv-988, 2015 U.S. Dist. LEXIS 28151, at *9 (Mar. 6, 2015 N.D. Ill.) (certifying FLSA settlement collective for settlement purposes and finding employees were similarly situated due to plaintiff's allegation of a common policy and defendant's non-objection to FLSA certification for settlement purposes).

Relevant particulars of the Settlement further meet the standards for approval, for the reasons set forth below.

## A.      Approval and Dissemination of the Notice Pursuant to the FLSA Is Appropriate.

The notice plan provides numerous benefits for the Collective discussed above. The proposed Notice and Opt-In Form accurately inform Collective members about the terms of the settlement, their rights and options, the release of their claims, the allocation formula, the amounts to be paid for attorneys' fees, costs and Lead Plaintiffs' awards, and the important settlement deadlines and timelines; and advise Collective members that they have considerable time (75 days) to opt-in. *See* Ex. C and D (Notice and Opt-In Form). This meets the relevant standards that courts have used to approve FLSA notices in other cases. *See Koszyk,* 2016 U.S. Dist. LEXIS 126893, at *3-4 (approving notice that "informs Eligible Settlement Class Members of the terms of the settlement, including the allocation formula, how Class Members may participate (or not participate), the estimated amount to which they are entitled, the scope of the release, and the request for attorneys' fees and costs."); *Briggs*, 2016 U.S. Dist. LEXIS 165560, at *4 (same).

Furthermore, dual postal and email distribution, where available, as discussed above, is favorable because it "...is likely to 'advance[ ] the remedial purpose of the FLSA by increasing the likelihood that all potential opt-in plaintiffs will receive notice.'" *Boltinghouse v. Abbott Labs, Inc.,* 196 F. Supp. 3d 838, 844 (N.D. Ill. 2016) (quoting *Shoots v. iQor Holdings US Inc*., No. 15-CV-563 (SRN/SER), 2015 U.S. Dist. LEXIS 141617, at *73 (D. Minn. Oct. 19, 2015)); *see also Atkinson v. TeleTech Holdings, Inc*., No. 3:14-cv-253, 2015 U.S. Dist. LEXIS 23630, at *11-12 (S.D. Ohio Feb. 26, 2015) (while notice just by U.S. mail is sufficient, the current nationwide trend is for notice by U.S. mail and email where possible as the dual methods of notice advance the remedial purpose of the FLSA).

## B. The Agreed Attorneys' Fees Are Appropriate.

Defendant has agreed to pay Plaintiffs' Counsel's fees totaling one-third of the Settlement Fund. Ex. A at ¶ 21. Plaintiffs' Counsel, experienced in wage and hour litigation,[5] undertook the case on a contingency basis and obtained a favorable settlement for the Collective. Ex. B at ¶¶ 2, 22-26, 32, 34.

Courts in the Seventh Circuit have long recognized that the risk undertaken by attorneys by litigating a contingency fee case is an important factor in determining the fee award. *See, e.g.,* *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994). It is well settled that attorneys who recover a common fund for class members are entitled to compensation for their work from the fund instead of directly from the pockets of the class members. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Spicer v. Chicago Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1249 (N.D. Ill. 1993).

Furthermore, the percentage method is preferred over other methods of fee award calculation. *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund."); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *25 (N.D. Ill. Oct. 10, 1995) ("…the Seventh Circuit strongly endorsed the percentage method of computing appropriate fee awards in class action common fund cases such as this."); *Will v. Gen. Dynamics Corp.,* No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, at *7 (S.D. Ill. Nov. 22, 2010) ("[t]he Seventh Circuit Court of Appeals uses a percentage basis rather than a lodestar or other basis when determining a reasonable fee."). That is especially true in FLSA employment cases,

---

[5] *See* Plaintiffs' Counsel's Firm Resume, attached hereto as Exhibit F.

like this one. *Koszyk*, 2016 U.S. Dist. LEXIS 126893, at \*8-10; *Furman*, 2017 U.S. Dist. LEXIS 73816 at \*11.

 "…[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services…." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001); *see Gaskill*, 160 F.3d at 363 ("[w]hen a fee is set by a court rather than by contract, the object is to set it at a level that will approximate what the market would set."). As a result, courts look to what the percentage in the marketplace for contingency litigation is when determining the percentage of a common fund recovery. *Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). "Where the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, 'the normal rate of compensation in the market" is 33.33% of the common fund recovered.'" *Will*, 2010 U.S. Dist. LEXIS 123349, at \*7-8.

 Here, Plaintiffs' Counsel's fee request of one-third of the Settlement Fund is equal to the common marketplace rate for contingency litigation. *See Koszyk*, 2016 U.S. Dist. LEXIS 126893, at \*8 ("Plaintiffs' request for one-third of the settlement in attorneys' fees is consistent with the market in the Northern District of Illinois."); *Goldsmith,* 1995 U.S. Dist. LEXIS 15093, at \*26 ("[t]hirty three percent appears to be in line with what attorneys are able to command on the open market in arms-length negotiations with their clients."); *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 909 (S.D. Ill. 2012) ("[c]ourts throughout the Seventh Circuit routinely consider the fee awards in other class actions and conclude that a one-third contingency fee is standard."); *Teamsters Local Union No . 604 v. Inter-Rail Transp., Inc.*, No. 02-CV-1109-DRH, 2004 U.S. Dist. LEXIS 6363, at \*3-4 (S.D. Ill. Mar. 19, 2004) ("[i]n this Circuit, a fee award of thirty-three and one-third (33 1/3%) in a class action in not uncommon. The utilization of the

market percentage method, as one district court has observed, results in awards of attorneys' fees 'equal to approximately one-third or more of the recovery.'")

Not only is an attorneys' fee award of one-third of the Settlement Fund the norm for class actions, but also, it is the common market rate specifically for FLSA wage and hour cases. *See Koszyk v. Country Fin.*, 2016 U.S. Dist. LEXIS 126893, at *8-11 (awarding one-third of $2,825,000.00 FLSA settlement fund in attorneys' fees, plus costs); *Furman,* U.S. Dist. LEXIS 73816 at *8-13 (awarding one-third of $990,000 FLSA settlement fund in attorneys' fees, plus costs); *Briggs*, 2016 U.S. Dist. LEXIS 165560, at *9-13 (awarding one-third of $6,000,000 FLSA settlement fund in attorneys' fees, plus costs); *Campbell v. Advantage Sales & Mktg. LLC*, No. 1:09-cv-01430-LJM-MJD, 2012 U.S. Dist. LEXIS 57218, at *7 (S.D. Ind. Apr. 24, 2012) (awarding one-third of FLSA settlement fund in attorneys' fees, plus costs); *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 U.S. Dist. LEXIS 18913, at *17-21 (S.D.N.Y. Mar. 2, 2010); *see also Watson v. BMO Fin. Corp.*, No. 15-cv-11881 (N.D. Ill. July 11, 2016) attached hereto as Exhibit G (awarding one-third of FLSA settlement fund for fees, plus costs, and otherwise granting the same relief requested herein).

Plaintiffs' Counsels' request for one-third of the Settlement Fund plus reimbursement of litigation expenses, including expert expenses, is thus perfectly within the market rate for common fund in wage and hour actions, particularly in the Northern District of Illinois.

The market rate is also reasonable in light of the significant risks of nonpayment that Plaintiffs' Counsel faced (and would continue to face in contested litigation, given Defendant intends to ardently oppose liability, and maintenance of collective certification through trial). From the outset, Plaintiffs' Counsel took on a significant degree of risk of nonpayment in agreeing to represent Plaintiffs due to the complexity of the issues as set forth above. *See Taubenfeld v.*

*Aon Corp.,* 415 F.3d 597, 600 (7th Cir. 2005) (approving of district court's reliance on this factor in evaluating attorneys' fees); *Sutton v. Bernard*, 504 F.3d 688, 693-94 (7th Cir. 2007).

Plaintiffs' Counsel has expended significant efforts and incurred expenses on a contingency basis, to obtain substantial benefits to the Collective, as described herein. *See* Ex. B at ¶¶ 22-26, 31-33. The Court should approve Defendant's agreement to pay Plaintiffs' Counsels' fees and costs.

### C. The Lead Plaintiff Payments Are Appropriate.

Additionally, the Court should approve Verizon Wireless' agreement to pay up to $10,000.00 to Martine Tucker and $10,000.00 to Rick Williston. Ex. A at ¶ 22. "Plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny." *Koszyk*, 2016 U.S. Dist. LEXIS 126893, at *4. "'Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit.' (citation omitted). This is especially true in employment litigation." *Id.* This is due to the fact that "'[i]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.'" *Velez v. Majik Cleaning Serv.*, 2007 U.S. Dist. LEXIS 46223, at *23 (S.D.N.Y. June 22, 2007) (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005)); *see also Furman*, U.S. Dist. LEXIS 73816, at *5 ("Service awards are well suited in employment litigation because the plaintiffs assume the risk that future employers may look unfavorably upon them if they file suit against former employers.").

Here, moreover, these payments not only recognize Plaintiffs' service on behalf of other workers and their contribution to a favorable collective action settlement, but also provide

consideration for the fact that Ms. Tucker and Mr. Williston, in addition to the limited release applicable to all Collective members, further fully release and discharge any and all claims against Defendant, including, for example, off-the-clock wage claims pleaded in the original Complaint. Ex. A at ¶ 48.

In considering whether enhancement awards are appropriate, "relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *see also Koszyk*, 2016 U.S. Dist. LEXIS 126893, at *5.

Ms. Tucker and Mr. Williston assisted Plaintiffs' Counsel with fact investigation, and identifying and analyzing policies and procedures; they regularly consulted with Plaintiffs' Counsel on many occasions; and they provided a sustained contribution to the prosecution of the case at every step of the process, over a period of years. They participated in the development of the claims, provided valuable facts not only with respect to the conception and development of claims, but also, given their knowledge of company operations, with respect to facts relevant to collective certification and proofs, and with respect to settlement, and otherwise facilitated the litigation, negotiation, and settlement of this matter. Ex. B at ¶¶ 27-28. The Named Plaintiffs, moreover, participated in extensive pre-suit investigation, and provided documents or information crucial to establishing Plaintiffs' allegations. *Id.* at ¶ 27; *See Koszyk*, 2016 U.S. Dist. LEXIS 126893, at *6 (awarding $10,000 incentive in FLSA collective settlement to each named plaintiff where "[t]hey participated in an extensive pre-suit investigation, provided documents crucial to establishing Plaintiffs' claims, and assisted Plaintiffs' counsel in analyzing documents during the informal discovery process."); *Castillo*, 2016 U.S. Dist. LEXIS 178977, at *6 (same).

21

Both Plaintiffs have taken a substantial risk in pursuing the instant litigation as they both continued to work in the retail industry after leaving employment with Verizon Wireless, with only the possibility of recovering some unpaid wages. *Meyenburg v. Exxon Mobil Corp.*, No. 3:05-cv-15-DGW, 2006 U.S. Dist. LEXIS 52962, at *6 (S.D. Ill. July 31, 2006) (awarding an enhancement award to a class representative for taking "the inconvenience and risk of pursuing litigation with only the possibility of monetary gain that at best would be modest"); *Furman*, 2017 U.S. Dist. LEXIS 73816, at *7 (incentive awards are appropriate in employment litigation because they risk retaliation by future employers); *Beesley v. Int'l Paper Co.*, No. 3:06-cv-703-DRH-CJP, 2014 U.S. Dist. LEXIS 12037, at *14 (S.D. Ill. Jan. 31, 2014) (recognizing the need for incentive awards due to the risks one subjects themselves to when they litigate against a current or former employer). By taking this risk, they played an essential role in reaching a favorable $2,730,000 settlement for the Settlement Collective and merit receipt of an additional award.

The Lead Plaintiff payment amounts requested at bar are well within the amounts regularly awarded by courts to named plaintiffs in collective and class actions. *See, e.g., Cook*, 142 F.3d at 1016 (affirming a $25,000 enhancement award to a class representative); *Briggs,* 2016 U.S. Dist. LEXIS 165560, at *5 (awarding $12,500 FLSA settlement service awards to each named plaintiff); *Koszyk*, 2016 U.S. Dist. LEXIS 126893, at *4 (awarding $10,000 FLSA settlement service awards to each named plaintiff); *Am. Int'l Group, Inc. v. Ace Ina Holdings, Inc*., No. 07 CV 2898, 2012 U.S. Dist. LEXIS 25265, at *59 (N.D. Ill. Feb. 28, 2012) (awarding a $25,000 service award to each of seven class representatives); *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (approving service awards of $55,000 and $35,000).

Accordingly, the Court should approve Defendant's agreement to pay the Lead Plaintiff payments.

## VII.    DISMISSAL

The Settlement provides that the parties file their stipulation to dismiss with prejudice, within 14 days upon filing valid and timely-submitted Opt-In Forms with the Court.  Ex. A at ¶ 28.  The Parties would concurrently stipulate to dismissal with prejudice of Plaintiff Kinlaw's claims, so that the action as a whole would be subject to stipulated dismissal at that time.

WHEREFORE, for the foregoing reasons, Plaintiffs Martine Tucker and Rick Williston respectfully request that the Court grant their Unopposed Motion For Approval Of Collective Action Settlement And Issuance Of Notice To The Settlement Collective and enter the Parties' approval order.

Respectfully submitted,

Martine Tucker and Rick Williston, on behalf of themselves and all others similarly situated

s/ Mark A. Bulgarelli, Esq.
Mark A. Bulgarelli

Ilan Chorowsky, Esq.
Mark A. Bulgarelli, Esq.
PROGRESSIVE LAW GROUP LLC
1570 Oak Avenue, Suite 103
Evanston, Illinois 60201
(312) 787-2717 (voice)

Alex Stepick, Esq.
STEPICK LAW LLC
2260 North Elston Avenue
Floor 2 South
Chicago, IL 60614
(773) 245-3884

*Counsel for Plaintiffs*

23

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 6th day of June, 2017, the foregoing Plaintiffs'
Memorandum in Support of Unopposed Motion for Approval of Collective Action Settlement and
Issuance of Notice to the Settlement Collective was filed via the Court's CM/ECF system, which
will send electronic notification to the attorneys of record at the e-mail addresses on file with the
Court.

By: /s/ Mark A. Bulgarelli, Esq.
One of the Plaintiffs' Attorneys